UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES BERNARD DABNEY III,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,<br><br>Defendants. | Case No.   23-cv-06498-EJD<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 14, 18 |

Plaintiff Charles Bernard Dabney III appeals the Commissioner of Social Security's[1] final decision determining that Dabney is no longer disabled and therefore ineligible for continuing disability benefits under Title XVI of the Social Security Act. Having considered the parties' cross motions for summary judgment and the record in this matter, the Court GRANTS Dabney's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. Therefore, the Court REVERSES the Commissioner's final decision and REMANDS for further proceedings consistent with this Order.

I.   **BACKGROUND**

   A.   **Medical History**

Dabney is a 31-year-old man dealing with several health issues stemming from two drive-by shootings. Tr. of Admin. Record ("Tr.") 651, 654, 917, ECF No. 9. The first shooting

---

[1] The current Commissioner, Leland Dudek, is automatically substituted as Defendant in place of his predecessor. Fed. R. Civ. P. 25(d).

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
1

occurred in July 2013, when Dabney was hit in the right parietal lobe and the right hand. *Id.* at 629, 654, 656. Dabney underwent two surgeries following this incident and later began to experience seizures. *Id.* at 624, 621, 627, 629, 654, 656. During the years following the first shooting, Dabney reported several other health issues, including feeling depressed, anxious, slowed psychomotor ability, mood disorder, and weakness on his left side. *Id.* at 744–49.

In January 2018, Dabney experienced another drive-by shooting which fractured his patella and his lower femur. *Id.* at 516, 831, 894, 908. As a result of this shooting, Dabney began physical therapy and was prescribed medication for nerve pain and other health needs. *Id.* at 805, 812, 1159. Dabney was later diagnosed with panic disorder, neuropathic pain, severe depression, and PTSD. *Id.* at 2287–88.

Dabney was found eligible for in-home support services ("IHSS") after the first drive-by shooting. Since 2013, Plaintiff's IHSS worker (his father) has assisted him with various tasks including preparing meals, laundry, cleaning up, bowel and bladder care, dressing, bathing and grooming, and repositioning. *See, e.g.*, *id.* at 3198, 3227.

### B. Procedural History

Dabney filed for Supplemental Security Income ("SSI") and was approved on November 21, 2013, with an onset date of July 10, 2013. Tr. 340. Dabney underwent a Continuing Disability Review ("CDR"), and on November 13, 2015, the agency determined that Dabney's disability had ceased due to medical improvement. *Id.* at 340, 352. Following an administrative hearing on February 22, 2018, the Administrative Law Judge ("ALJ") Arthur Zeidman determined that Dabney's disability had ended on November 13, 2015. Dabney requested Appeals Council review of this decision, which was denied on August 12, 2019. *Id.* at 2, 41, 403. Dabney appealed his case to this District, and on June 15, 2020, Judge Vincent Chhabria remanded the case pursuant to a stipulation. *Id.* at 1289–96.

Dabney appeared before ALJ Hernandez on March 8, 2023, and the ALJ issued an unfavorable decision on September 7, 2023. *Id.* at 1227. Dabney appealed the Commissioner's final decision to this Court. Compl., ECF No. 1.

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
2

## II.  LEGAL STANDARD

Courts review an ALJ's decision to deny Social Security benefits for substantial evidence. *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023). There is substantial evidence when there is "more than a mere scintilla, but less than a preponderance" of evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Put differently, substantial evidence is "such relevant evidence [that] a reasonable person might accept as adequate to support a conclusion." *Id.* If an ALJ's decision is not supported by substantial evidence, courts will reverse. *Glanden*, 86 F.4th at 843. Courts also review an ALJ's decision for legal error. *Id.* If the decision contains a legal error, courts will reverse that decision unless the legal error was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). An error is harmless only when it is "inconsequential to the ultimate nondisability determination" or when "the agency's path [to its conclusion] may be reasonably discerned" despite the error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citations omitted).

## III.  DISCUSSION

Dabney claims that the ALJ's decision to deny him benefits contains five different errors. He asserts the ALJ erred (1) by rejecting the opinions of Dabney's treating and examining sources without specific and legitimate reasons; (2) by failing to provide clear and convincing reasons for rejecting Dabney's testimony; (3) in finding that Dabney had medically improved; (4) by relying on an Residual Functional Capacity ("RFC") that is not supported by substantial evidence, and (5) by relying on Vocational Expert ("VE") testimony based on an incomplete hypothetical to find Dabney not disabled. Dabney's Mot. for Summary Judgment ("Mot."), ECF No. 14. The Court addresses each alleged error in turn.

### A.  Medical Opinions

Dabney begins by claiming the ALJ did not provide legally sufficient reasons for her assigning certain weight to Dabney's providers. Dabney filed his disability application after March 27, 2017, so the former regulations apply when analyzing the medical opinions. Under the former regulations, courts weigh medical opinions based on the extent of the doctor's relationship

with the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). These relationships are categorized in "a three-tiered hierarchy." *Id.* (citing *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021)). At the top are treating physicians—or medical sources who treat or evaluate the claimant and have an ongoing treatment relationship with her. *See* 20 C.F.R. § 404.1527(a)(2); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036–38 (9th Cir. 2003). A treating physician's opinion is entitled to "substantial weight," and courts generally give it "more weight ... than ... the opinion of doctors who do not treat the claimant." *Woods*, 32 F.4th at 789 (cleaned up). In the middle tier are doctors who examine the claimant but do not have an ongoing relationship with her. *Id.* ("The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician."). To reject either a treating or an examining physician's opinion, an ALJ must provide "clear and convincing reasons," if the opinion is uncontradicted by other evidence, or "specific and legitimate reasons" otherwise, and the reasons must be supported by substantial evidence. *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). The lowest-weighted tier comprises "physicians who only review the record." *Id.* (quotations omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (quotations omitted).

Dabney challenges the ALJ's treatment of five[2] medical opinions. The Court reviews each in turn.

### 1. Dr. Christina Chavez-Johnson

Dr. Chavez-Johnson is Dabney's primary care provider who had been treating Dabney since September 2014 at the time she submitted a medical source statement in February 2023. In that statement, Dr. Chavez-Johnson opined that Dabney had a reduced range of sedentary exertion, including the need to alternate between sitting and standing on an hourly basis and preclusion from reaching and handling.

---

[2] Dabney groups Chidoze Ibe, Cole Armstrong, and Vesta Bell's opinions when challenging the ALJ's discussion of them.

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
4

The ALJ gave "limited weight" to Dr. Chavez-Johnson's opinion and found it "unsupported by objective findings." In rejecting Dr. Chavez-Johnson's—a treating provider—opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for doing so. The ALJ's reasonings fall short. The ALJ notes that the "objective findings" show "some left-hand sensory deficits" but "not a complete absence of sensation or such deficits warranting preclusion from manipulative activities on the left." Tr. 1235. But the ALJ does not explain why "some left-hand sensory deficits" could not, in a treating provider's opinion, be sufficient to recommend Dabney be precluded from using that hand. In other words, the ALJ determined that, because Dabney's records did not show that his left hand was completely nonfunctioning, Dr. Chavez-Johnson's opinion that he could not use it effectively should be given limited weight. This is not a legitimate reason to discount Dr. Chavez-Johnson's opinion and is not supported by substantial evidence.

The ALJ also discounted Dr. Chavez-Johnson's opinion that Dabney had limitations in standing and walking because in March 2018, Dr. Chavez-Johnson "observed [Dabney's] left leg to be slightly smaller, but noted that he was able to push with 5/5 on the left foot and that he exhibited normal sensation to touch." Tr. 1235. But having normal sensation in a leg and an ability to push with that foot is not necessarily inconsistent with Dr. Chavez-Johnson's opinion that Dabney needs to alternate between sitting and standing. Moreover, the ALJ states that examinations "do not show assistive device use" and "show a normal gait or at most a slight or mild limp." *Id.* at 1235. The ALJ does not cite to the record, and therefore the Court cannot evaluate whether it was a specific, legitimate reason for discounting Dr. Chavez-Johnson's opinion.

Based on the above, the ALJ failed to provide legally sufficient reasons to give limited weight to Dabney's primary care provider, Dr. Chavez-Johnson.

### 2. Chidoze Ibe NP, Cole Armstrong AMFT, and Vesta Bell ASW

These providers opined that Dabney had "largely marked and extreme limitations in areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting and

managing [himself]." Tr. 1236. The ALJ gave "little weight" to these opinions because none of the three providers qualify as an acceptable medical source. Nevertheless, the ALJ is required to support her conclusions with clearly articulated reasoning and an accurate characterization of the record. 20 C.F.R. § 416.927(f). The ALJ found that the severity of Dabney's mental limitations as described by the above providers was not supported because the providers frequently reported "appropriate and cooperative behavior, adequate eye contact, linear thought processes, and intact insight and judgment." Tr. 1236. The ALJ does not go further to explain her reason for finding that cooperative behavior or adequate eye contact and grooming, for example, would contradict an opinion that Dabney had difficulty concentrating or maintaining pace. Dabney could have "intact insight and judgment" while also having marked difficultly interacting with others. The ALJ was required to articulate her reason for concluding that these observations led her to give little weight to the above provider's opinions.

The ALJ also observed that Ms. Bell reported Dabney had difficulty attending appointments "due in part to exhaustion and mistrust of others due to PTSD," but treatment notes show Dabney missed some appointments due to travel. Tr. 1236. In observing this inconsistency, the ALJ identified a clearly articulated reason for discounting a particular opinion in Ms. Bell's report, and the Court finds no error.

Nevertheless, the Court finds that the ALJ largely failed to provide legally sufficient reasons for discounting the opinions of Chidoze Ibe NP, Cole Armstrong AMFT, and Vesta Bell ASW for the reasons stated above.

### 3. Dr. Sokley Khoi

The ALJ gave "partial weight" to the opinion of Dr. Sokley Khoi, who performed a consultative psychological examination in February 2020.[3] Tr. 1235. For similar reasons articulated with respect to the above providers, the ALJ failed to provide legally sufficient reasons for discounting the weight of Dr. Khoi's opinion, too. Dr. Khoi opined that Dabney appeared to

---

[3] Dr. Khoi made several other findings the ALJ accorded significant weight to. *See* Tr. 1236. Dabney does not challenge the ALJ's treatment of those findings.

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
6

be experiencing symptoms of PTSD, and he had "marked" impairment in the ability to withstand the stress of a routine workday. *Id.* at 2422. Dr. Khoi also found "moderate to marked" impairment in the ability to interact with co-workers, supervisors, and the public on a regular basis. *Id.* The ALJ determined these findings were unsupported by the record as a whole because (1) Dabney demonstrated "fair eye contact, a cooperative attitude, linear and coherent thought processes, logical thought content, adequate insight and judgment, adequate attention, concentration, and persistence, and normal pace throughout the examination"; and (2) other mental status findings "generally show" similar behavior. *Id.* at 1235–36. The issue again is the ALJ's failure to tie "fair eye contact" or "a cooperative attitude," for example, with the ability to withstand stress of a routine workday. The Court sees no basis in the ALJ's decision or the record to suggest that a person who exhibited "adequate insight" and "adequate attention" during an exam could not also have severe impairment in withstanding stress of a workday or ability to interact with others on a regular basis.

Additionally, the ALJ cites Exhibit 27F as an example of Dabney's demonstrated mental status that the ALJ felt undermined Dr. Khoi's opinion. Tr. 1235. The progress notes from that visit, however, state that Dabney "exhibits characteristic avoidance, intrusions, and hyperarousal symptoms." *Id.* at 2651. The exam also notes that Dabney showed "pervasive negative emotionality, including significant helplessness," and his "depression and hypervigilance interferes with functioning." *Id.* The ALJ's conclusion giving Dr. Khoi's opinion regarding Dabney's impairments little weight is thus not supported by substantial evidence.

### 4. Dr. Rosemarie Ratto

Dr. Ratto performed a psychological examination of Dabney on February 1, 2023. Tr. 3445. Based on Dr. Ratto's evaluation of Dabney, Dr. Ratto opined a marked or marked to extreme impairment in all areas of work-related functioning. *Id.* at 3451. The ALJ gave "little weight" to Dr. Ratto's opinion because, in the ALJ's view, the record did not reflect "consistent deficits" in Dabney's concentration and memory as reported by Dr. Ratto. *Id.* at 1236. The ALJ noted that providers had reported Dabney played poker up to 10 hours per day and played video

games, which suggested "greater capacity to sustain focus than alleged." *Id.* The ALJ also referred to another examiner who "noted inconsistent attention and concentration" but who observed that Dabney could spell "world" backwards and could accurately perform simple math. *Id.* Finally, the ALJ noted that Dabney "demonstrated adequate attention, concentration, and persistence and worked at a normal pace" during an examination in February 2020. *Id.*

These stated reasons are inadequate to justify discounting the entire opinion of Dr. Ratto. While the ALJ's observation that playing poker for 10 hours per day does tend to contradict Dabney's stated difficulty concentrating, the record otherwise supports an inability to concentrate. For example, Dr. Huerta reported Dabney's difficulty concentrating or thinking and a marked to extreme limitation on ability to focus attention on activities and stay on task. *See id.* at 3506–10. Additionally, the ALJ failed to explain why Dabney's ability to spell one word backwards or complete a simple math problem negates the remainder of Dr. Ratto's extensive cognitive evaluation.

The ALJ erred in giving little weight to Dr. Ratto's entire report without providing specific and legitimate reasons supported by substantial evidence.

### 5. Dr. Steven Golub

Dr. Golub opined that Dabney would be restricted to lifting and carrying less than ten pounds and that Dabney would "might" require a cane or handheld assistive device. Tr. 1267, 1269. The ALJ gave Dr. Golub's opinion "some weight" and noted that his opinion regarding the assistive device is not supported in the record. *Id.* at 1234–35. But on February 24, 2022, IHSS records indicate that Dabney used a cane and shower chair. *See id.* at 3327. The narrative from IHSS also noted that Dabney was able to "ambulate with cane." *Id.* at 3328.

Accordingly, Dr. Golub's opinion that Dabney might require a cane is supported in the record, and the ALJ erred by concluding otherwise.

### B. Subjective Testimony

Dabney claims the ALJ failed to sufficiently explain her decision to discount Dabney's subjective testimony. Dabney also alleges the ALJ erred in assigning little weight to testimony

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
8

from Dabney's parents.

### 1. Dabney's Testimony

In dealing with a claimant's subjective testimony, when a claimant has medically supported impairments that could cause his symptoms, the ALJ must provide "specific, clear, and convincing reasons" for "reject[ing] the claimant's testimony about the severity of those symptoms." *Ferguson v. O'Malley*, 95 F.4th 1194, 1197–98 (9th Cir. 2024) (quoting *Brown-Hunter*, 806 F.3d at 488–89). This requires the ALJ to "show [her] work" by providing an explanation "clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In *Brown-Hunter*, the ALJ made the conclusory declaration that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 493. Then, the ALJ merely summarized the medical evidence before paraphrasing her earlier conclusion, stating again that "the functional limitations from the claimant's impairments were less serious than she has alleged." *Id.* The Ninth Circuit held that the ALJ's explanation failed to satisfy the specific, clear, and convincing standard because it did not specifically identify portions of the claimant's testimony that were allegedly inconsistent with the record, and the explanation did no more than summarize the medical evidence. *Id.* at 494. Although a court might have been able to draw reasonable inferences from the summarized evidence, the Ninth Circuit explained that doing so results in the court improperly making credibility determinations in place of the ALJ. *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Rather than allowing a court to infer the ALJ's reasoning, the specific, clear, and convincing standard requires the ALJ to do the work of laying out her reasoning by linking specific testimony to specific evidence undermining that testimony. *Id.* The purpose is to allow courts to review the ALJ's actual reasoning instead of speculating on what that reasoning may have been. *Id.*

Here, the ALJ started by stating the following:

After considering the evidence of record, I find that the claimant's current

> medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

Tr. 1232. She then proceeded to summarize Dabney's medical records. *See id.* at 1232–33. Like the ALJ in *Brown-Hunter*, the ALJ here did not tie specific evidence to specific testimony. Rather, the ALJ simply concluded that the "alleged severity" of Dabney's "functional loss" and his "mental impairments" are not consistent with or supported by the record. *Id.* at 1232–33. The ALJ was required to identify the *specific testimony* she found not supported by the record rather than his alleged severity of functional loss and mental impairments as a whole. While the ALJ does refer to "claimant's testimony" (Tr. 1233), she fails to identify *what* testimony is problematic. On remand, the ALJ should tie the specific evidence she cites to the specific testimony undermined by that evidence.

Because the ALJ's explanation for rejecting Dabney's subjective testimony is not sufficiently tied to specific testimony, remand is required on this basis.

### 2. Dabney's Parents' Testimony

The ALJ accorded Dabney's parents' statements "little weight" because the statements were not from a medical source and not entitled to deference. Tr. 1238. The ALJ explained that the statement "largely reiterate [Dabney's] allegations, which are not fully supported by the objective medical evidence of record for reasons stated above." *Id.*

The Ninth Circuit has explained that ALJs "must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony "as to a claimant's symptoms or how an impairment affects ability to work is competent evidence … and therefore *cannot* be disregarded without comment." *Id.* (quotations omitted) (emphasis in original). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Id.* (citations omitted).

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
10

Here, Dabney's mother testified to the following: Dabney lives with her two weeks per month, he has never lived independently, he is in a depressed state constantly, he has a short attention span, he has anxiety and nightmares, he needs help with basic tasks, he has difficulty trusting strangers, he has trouble processing his anger, he has numbness on the left side of his body, he takes certain medications due to his seizures, and he cannot be alone. Tr. 514–16. Dabney's father, Dabney's IHSS worker, testified along similar lines. *See id.* at 1677. The testimony from both of Dabney's parents concern how Dabney's impairments impact his ability to work and are consistent with medical records.

In discounting both statements because they "largely reiterate" Dabney's allegations, the ALJ erred. It makes sense that Dabney's parents, who spend significant time with their son, would observe the challenges Dabney experiences. Moreover, the ALJ does not refer to which allegations the ALJ found not fully supported by the record. *See id.* at 1238.

For these reasons, the ALJ failed to give legally sufficient reasons that are germane to each witness for discounting Dabney's parents' statements.

### C. Finding Dabney Medically Improved

Dabney asserts that the ALJ failed at step two in finding that Dabney medically improved because that finding is not supported by substantial evidence.

At step two, an ALJ must determine whether a claimant has experienced medical improvement. 20 C.F.R. § 416.994(b). Medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 416.994(c)(1). If there has been no improvement, the claimant remains disabled and benefits continue. 20 C.F.R. § 416.994(b). Evidence of improvement must be examined "in the broader context of [the claimant's] impairment". *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (citations omitted).

Here, the ALJ determined that medical improvement occurred on November 13, 2015. Tr. 1229. In so finding, the ALJ noted that treatment records since that date do not document

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
11

1  ongoing seizure activity, Dabney requested reinstatement of his driver's license and ultimately got
2  his license in August 2017, and Dabney regained strength and mobility. *Id.* at 1229–30.

3  This evidence does support the ALJ's conclusion that Dabney had shown *some* improvement in his symptoms since the 2013 shooting. However, the ALJ was required to examine this evidence in the broader context of Dabney's impairments. When the evidence of Dabney's improvement is examined "in the broader context of [Dabney's] impairment," the Court finds that the examples the ALJ relies on were insufficient to show sustained improvement.

Although Dabney's mobility had improved in certain respects, the record supports finding that Dabney nevertheless continued to experience symptoms that impair his ability to work beyond 2015. For instance, his father states that Dabney often needs assistance using the restroom, he sometimes uses a cane, he has difficulty using his left hand, and he is anxious all the time. Tr. 1677–78. Several medical providers opined (post-2015) that Dabney would likely be absent from work four days or more per month or be off-task frequently due to his impairments. *See id.* at 2958, 3143, 3149, 3508. And following the second drive-by shooting in January 2018, Dabney reported significant pain and numbness on his left side (*id.* at 1017, 1166), and he was diagnosed with depression and PTSD (*id.* at 2427–30, 2709–22).

Based on the above, the ALJ erroneously focused on temporary periods of Dabney's improvement that do not reflect the continuing symptoms Dabney experienced. The ALJ's finding of medical improvement is therefore not supported by substantial evidence.

### D. Residual Functional Capacity

Dabney contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ erroneously rejected (1) the opinions of Dabney's treating and examining providers, and (2) Dabney's testimony regarding his impairments. Because the ALJ provided legally insufficient reasons for discounting certain medical and lay testimony (*see supra* Sections III(A), (B)) and proceeded to formulate an RFC based on her conclusions with respect to those opinions, the Court finds that the ALJ's RFC, in turn, is not supported by substantial evidence. On remand, the ALJ shall reconsider the RFC after giving proper weight to the opinions above.

Case No.: 23-cv-06498-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
12

### E. Vocational Expert Testimony

Finally, Dabney argues that the ALJ erred by relying on vocational expert testimony based upon incomplete hypotheticals. Remand is appropriate given the Court's findings regarding the ALJ's other errors. Because the ALJ improperly discounted certain testimony, her resulting RFC finding did not account for all of Dabney's limitations. It follows, then, that the hypothetical posed to the vocational expert did not properly encompass all of Dabney's limitations.

## IV. CONCLUSION

For the foregoing reasons, the ALJ erred in evaluating certain medical opinion and lay testimony. This error resulted in an RFC that did not account for all of Dabney's limitations. Accordingly, the Court GRANTS Dabney's motion and REMANDS for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 18, 2025

EDWARD J. DAVILA
United States District Judge